## HART *v.* BACKSTROM.*

(In Banc.   June 13, 1927.   Suggestion of Error Overruled Sept. 26, 1927.)

[113 So. 898.   No. 26307.]

1. STATUTES.   *Requirement that law shall be set* out at length as amended or revived held not applicable to amendments by implication where amending statute is complete within itself (Constitution 1890, section 61).*

   Section 61 of the Constitution of 1890, providing that "no law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length," has no application to amendments by implication when the amending statute is complete within itself.

2. STATUTES.   *Prohibition against reviving or amending law by reference to title only was intended to prevent deceiving legislators and public; statutes amending other statutes by implication need not even refer to acts or sections amended (Constitution 1890, section 61).*

   "The mischief designed to be remedied by section 61 of the Constitution of 1890 was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose.   Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation.   .   .   .

   "Statutes which amend other statutes by implication are not within this provision; and it is not essential that they even refer to acts or sections which by implication they amend."

3. STATUTES.   *Statute dispensing with requirement of another statute that lists of land struck off to state for taxes should be filed with land commissioner amends it by implication and does not violate constitutional provision that law amended or revived shall be inserted at length (Laws 1920, chapter 231; Code 1906, sections*

2933, 2935, 2937; *Hemingway's Code, sections* 5268, 5270, 5272, 6967; *Constitution* 1890, *section* 61).

Chapter 231, Laws 1920, dispensing with the requirement of section 2933, Code of 1906 (Hemingway's Code, section 5268), that the lists of lands struck off to the state for their taxes shall be filed with the land commissioner, is not violative of section 61 of the Constitution of 1890, providing that "no law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length;" the reason being that the amendment of the latter statute by the former is not an express amendment but an amendment by implication, and the former statute is complete within itself.

4. STATUTES. *Statute postponing tax sales held not to violate constitutional provision against suspending general law (Laws* 1922, *chapter* 137; *Code* 1906, *section* 4326; *Hemingway's Code, section* 3811; *Constitution* 1890, *section* 87).

Chapter 137 of the Laws of 1922 is not violative of section 87 of the Constitution of 1890, providing "that the operation of a general law shall not be suspended by the Legislature for the benefit of any individual or private corporation or association," for the reason that the suspending statute (chapter 137, Laws of 1922) is as broad and general in its terms as the operation of the statute suspended (section 4326, Code of 1906; Hemingway's Code, section 3811), which is a general statute.

5. STATUTES. *Taxation. Section of statute held not unconstitutional as suspending preceding section providing for sale of lands generally for taxes; statute as to sales for taxes held not special law granting land under state's control; statute as to sales for taxes held not invalid as donating land under state's control to private corporations or individuals (Laws* 1926, *chapter* 185, *sections* 1, 2; *Constitution* 1890, *sections* 87, 90, *par.* [u]; *section* 95).

Section 2, chapter 185, Laws of 1926, is not violative of either section 87 of the Constitution, paragraph (u) of section 90 of the Constitution of 1890, nor of section 95 of the Constitution, in that it suspends the operation of section 1 of chapter 185 of the Laws of 1926, which section of the statute provides for the sale of lands generally for their taxes to any and all persons; the statute not being an unconstitutional effort to give preference to those who had purchased from the land commissioner, but who by reason of want of authority in that officer were without title, nor a donation of state lands.

6. TAXATION. *Purchaser from state of land it bought for taxes, held entitled to decree quieting title (Laws 1922, chapter 137; Laws 1926, chapter 185).*

Where land situated in a municipality was sold to state for taxes in accordance with Laws 1922, chapter 137, on the first Monday of May, and list as required by such chapter was certified and filed in office of chancery clerk, including such land, purchaser of land from state at a price exceeding $1.25 per acre, who repurchased under authority of laws 1926, chapter 185, *held* entitled to decree quieting title.

ETHRIDGE, J., SMITH, C. J., and McGOWEN, J., dissenting.

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 710, n. 60, 62; p. 711, n. 63, 67; States, 36Cyc, p. 885, n. 47; Statutes, 36Cyc, p. 994, n. 96; p. 1060, n. 76; p. 1063, n. 79; p. 1064, n. 85; p. 1102, n. 78; Taxation, 37Cyc, p. 1488, n. 61; As to constitutionality of prohibition of amendment or repeal of statute by reference to title only, see annotation in 6 A. L. R. 216; 18 A. L. R. 68; 25 R. C. L., pp. 872, 873; 4 R. C. L. Supp. 1605; 6 R. C. L. Supp. 1488.

APPEAL from chancery court of George county.

HON. V. A. GRIFFITH, Chancellor.

Suit by Oscar Backstrom against Sydney Hart and others to quiet title. From a decree for plaintiff, the named defendant appeals. Affirmed.

*Hughes, Nobles & Lane,* for appellant.

By reference to chapter 135, Acts of 1922, it will be found that the legislature had in mind making it unlawful for any sheriff and tax collector to collect any damages on taxes for the fiscal year 1921 until on and after April 1, 1922, as section 1 of said chapter clearly shows. Section 3 of said chapter 135 provides: "That this is an emergency act and shall expire on April 1, 1922." But section 4, chapter 137, Acts of 1922, took up chapter 135, Acts of 1922, with all its provisions and continued it therein in full force and effect until May 1, 1922. It seems to us perfectly clear that chapter 137 of the Acts of 1922 intended to change the law only with reference to what the published notices should state, as to the date of sale,

and by its own terms failed to accomplish this purpose. But if the court should take the view that the operation of section 4326, Code of 1906, providing and directing what the posted and published notices shall contain as to the date of sale, was suspended and that section 1, chapter 137, Acts of 1922, fixed the date of sale as provided in section 4326 and made it to read by the said act, first Monday of May, 1922, instead of first Monday of April, 1922, then in that event it must be clear to the court that the change thus made in the law with reference to recitals in notices already published, hopelessly conflicted with chapter 199, Acts of 1908, or section 6962, Hemingway's Code, fixing the date when sales for delinquent lands should take place, for the first Monday of April.

On the first day of April, 1922, the date on which chapter 137, Acts of 1922, was passed and approved, every tax collector in the state, under the existing laws, had his list of delinquent lands already advertised in newspapers of their respective counties, to be sold on the following Monday, only three days from the date of the approval of this emergency act.

It is positively certain that it did not occur to the legislature that the change with reference to the notices of sales already published throughout the state to take place on the first Monday of April, but changed to make it read the first Monday of May, hopelessly conflicted with chapter 199, Acts of 1908, or section 6962, Hemingway's Code, which provided for sale of delinquent tax lands to take place on the first Monday of April, and further provided that failure to advertise or error in the advertisement should not invalidate the sale at the proper time and place, but that a sale at the wrong time or the wrong place would be void.

But this is not the first time the legislature of this state has made the law fixing dates providing for published notices for sale of delinquent lands to conflict with the law providing when and how delinquent lands would

be sold.   See *Simpson* v. *Interstate Cooperage Co.,* 58 So. 4, construing sections 4326 and 4328, Code of 1908.

The legislature by the enactments of chapter 137, Acts of 1922, did not undertake to suspend the operation of chapter 199, Acts of 1908, or section 6962, Hemingway's Code, which fixes the date for the sale of delinquent taxes on the first Monday of April, because neither chapter 199, Acts of 1908, or section 6962, Hemingway's Code, anywhere appears in the Code of 1906 and could not have been remotely in the mind of the legislature in the passage of chapter 137, Acts of 1922.   If it is contended by the appellee that it was the purpose of the legislature in passing chapter 137, Acts of 1922, to suspend the operation of chapter 199, Acts of 1908, or section 6962, Hemingway's Code, by implication, then we say that the chapter would fail under condemnation of section 71 of the Constitution, requiring that every bill introduced into the legislature shall have a title and the title ought to indicate clearly the subject-matter or matters of the proposed legislation.   *Levee Commissioners* v. *Royal Ins. Co.,* 51 So. 2.   Repeal by implication is not favored by our courts.

We submit that when this land was sold on the first day of May, the first Monday of May, 1922, that sections 5268, 6965 and 5271, Hemingway's Code, embraced all the laws in Mississippi that provided for selling of lands to the state for the nonpayment of taxes for the fiscal year 1921, for the making and filing of lists so sold to the state, for the vesting of state with title to such lands so sold, and for the redemption of such lands by the owner.

Both the pleadings and the evidence show that the list provided for in section 2933, Code of 1906 (section 6965, Hemingway's Code), was never made, certified, transmitted and filed with the land commissioner as provided for in sections 5268 and 6965 of the Code, and for this reason we say that the state could not have been vested

with title to this land. *Mason* v. *Banks,* 59 Miss. 447; *Adams* v. *Mills,* 14 So. 462; *Howie* v. *Banks,* 59 Miss. 447.

The court will not overlook the fact that title to lands struck off and sold to the state for the nonpayment of taxes under section 6965, Hemingway's Code, can be vested in the state only when sold, and the list made and transmitted as provided for in section 2933, Code of 1906 (section 5268, Hemingway's Code). It is to be further noted by the court that section 6965 and section 5268, Hemingway's Code, had not been repealed or amended on the first Monday of May, 1922, when the alleged sale of the lots in question to the state took place, nor were these laws suspended, repealed or amended by chapter 137, Acts of 1922, or by chapter 231, Acts of 1920. In this connection, it is further to be noted by the court that section 5271, Hemingway's Code, was the only statute that we had on the date of sales of these lots to the state on May 1, 1922, that provided what the owner must do in order to redeem his land sold to the state and that provided the official clerical acts that must be performed by the redeeming officer in order to divest the state of its title to the land and invest the party redeeming with title to the land.

No provisions are made whatever in either chapter 231, Acts of 1920, or chapter 137, Acts of 1922, as to what the owner must do in order to redeem, nor what clerical or official acts that must be performed by the redeeming officer in order to divest the state of its title to the land and invest the party redeeming with title to the land.

No provisions are made whatever in either chapter 231, Acts of 1920, or chapter 137, Acts of 1922, as to what the owner must do in order to redeem, nor what clerical or official acts the chancery clerk must perform in order to release the state's title to the land and invest the party redeeming with title to the land. The chancery clerk has no authority to execute a release of the state's title to forfeited tax lands, attested by his seal of office and the same should not require an acknowledg-

ment of its execution, and the same may be recorded without acknowledgment. These are conditions that must be prescribed by the legislature under section 79 of the Constitution and the omission of which cannot be supplied by the court under the Constitution.

Chapter 231, Acts of 1920, is void because it undertakes to amend sections 5268, 5271, 6964 and 6965, Hemingway's Code, without inserting the sections at length as amended, as provided by section 61 of the Constitution. It cannot be contended, in this connection, that chapter 231, Acts of 1920, repealed section 5268, Hemingway's Code, because this is the only statute we have had in this state from the adoption of the Code of 1906 to the present time that provides for the sale of lands to the state for the nonpayment of taxes, or that provides for the making, the time of transmitting and filing the list of lands struck to the state. If it is true that section 5268 of Hemingway's Code is repealed, then we have no statute whatever in Mississippi that provides for the sale of lands to the state for the nonpayment of taxes; for the making, transmitting and filing of such lists within a given period of time in order that the owner may redeed.

The appellant again assails the validity of chapter 137, Acts of 1922, on the ground that the legislature was without authority, on the date of the approval of said act, to enact a law that would change the date for the sale of delinquent tax lands from the first day of April, to the first day of May and to change the date of transmitting and filing of said lists from the first day of April to the first day of May, and from the first day of May to the first day of June; the same would fail under condemnation of section 16 of the Constitution which provides that *ex post facto* laws or law impairing the obligation of contracts shall not be passed.

The appellant also had vested rights provided in the statute with reference to the assessment of said property, and in the law that provides for its sale for the non-

payment of taxes, and his right to redeem the same as the law existed from the first day of February, 1921, that provided for the assessment and for the lien for the taxes thereon and for the sale of the property in default of payment. Section 6886, Hemingway's Code, provides that all taxes assessed shall be a lien upon and bind the property assessed from the first day of February of the year in which the assessment is made, and section 6962, Hemingway's Code, provides that: "On the first Monday of April, if the taxes remain unpaid the collector shall proceed to sell the land," and section 5268, Hemingway's Code, provides that land struck off to the state shall be listed and transmitted to the land commissioner on or by the first Monday of May thereafter, where the same may be redeemed at any time within two years from the date of the sale. The appellant under the above statute had vested rights under the law that bound his land under a first lien from the first day of February, 1921, until the taxes thereon had been collected. *Moody* v. *Hoskins,* 1 So. 623.

We submit to the court that the legislature had no more right to change the date for the sale of tax lands, for the making and filing conveyances and list so sold, and for redeeming than they would have to change the terms as to a sale and redemption provided for in a deed of trust.

House Bill 16, Acts of 1926, is challenged by the pleadings because it violates sections 87, 90 and 95 of the Constitution of the state, and the Fourteenth Amendment to the Federal Constitution, Section 1 of House Bill 16, Acts of 1926, provides that lands situated in municipalities where the title is vested in the state may be sold by the land commissioner with the approval of the governor, even though it may be divided into lots and blocks. But section 2 of the same act provides that: "All sales of such land situated within such municipalities and which have been sold by the land commissioner at a fair and reasonable price, not less than that prescribed for the

swamp and overflowed lands, may be conveyed to the original holder of the patent; or if he has sold the same, to his vendee." The act further provides that no land sold or attempted to be sold shall be sold until notice by registered mail is given to the original buyer or his vendee, informing him of his rights, and within thirty days after mailing such notice.

Section 89 of the Constitution provides that the operation of no general law shall be suspended by the legislature for the benefit of any individual or corporation; but section 2, House Bill 16, Acts of 1926, suspends the operation of the general law provided for in section 1 of said act, which provides for the sale of such land generally to any and all persons; until the happening of such contingencies as prescribed in section 2 shall have taken place; and it is to be observed by the court that the contingencies provided for in section 2 are for the purpose of taking care of certain individuals.

House Bill 16, Acts of 1926, is a land grant within the purview and meaning of section 90 of the Constitution of the state, providing that: "The legislature shall not pass local, private or special laws in the following enumerated cases, but such matters shall be provided for only by general laws; viz.: (u) Granting any lands under the control of the state to any person or corporation." See *Winton* v. *Day*, 96 Miss. 1, 49 So. 264.

Again House Bill 16, Acts of 1926, is a donation of land to private corporations or individuals within the clear meaning and purview of section 95, Constitution of Mississippi. See *Winton* v. *Day, supra*. The statute violates section 95 of the Constitution as it is a donation of land "belonging to or under control of the state." *Huber* v. *Freret*, 103 So. 3.

The Fourteenth Amendment of the Federal Constitution among other things provides that: "No state shall make or enforce any law which abridges the privileges or immunities of citizens of the United States; or deny any person within its jurisdiction equal protection of the

law.'' Section 2 of House Bill 16, Acts of 1926, abridges the privileges of all citizens from buying except such as had previously bought certain city property, the privilege of buying the property named. *Smith* v. *Halfacre,* 6 How. 582; *Thompson* v. *Grand Gulf R. R. & Banking Co.,* 3 How. 240.

*Ross, Backstrom & Bickerstaff,* for appellee.

I. All the contention of counsel may be answered by the fact that chapter 137, Laws of 1922, provided a complete scheme in itself for the making of tax sales for the taxes due for the fiscal year 1921. The general laws with reference to making and conducting tax sales are not changed, abridged, modified or amended in any way, but only the time for the making of the sales and the time and mode of filing the conveyances are dealt with. The redemption is governed by the general laws.

Statutes will be construed so as to save the statute, if possible, it not being the purpose of the courts to impute to the legislature the doing of foolish and vain things. It appears to us to be clear that it was the legislative intent to continue the tax sales as advertised, not from day to day, but from the first Monday of April, 1922, to the first Monday of May, 1922, and make appropriate provisions for the filing of the conveyances and lists, as this would be necessary under the existing laws and when this was done, let all of the other matters incident to the sales be governed by the general laws.

As to the major contentions of counsel, we call attention to sections 5268 and 5270, Hemingway's Code (sections 2933 and 2935, Code of 1906). Section 5268, Hemingway's Code (section 2933, Code of 1906) provides that lands struck off to the state shall be listed and certified and then transmitted to the land commissioner on or before the first Monday of May thereafter, when the sale is made at the regular time appointed by statute therefor; but section 5270, Hemingway's Code (section

2935, Code of 1906), provides that when land is not sold at the regular time appointed by statute and is thereafter sold under an order of the board of supervisors designating a day therefor, the list of lands struck off to the state shall be made and certified by the tax collector and immediately filed in the office of the chancery clerk. We are not aware that the authority of the legislature to designate the office of the chancery clerk as the proper place for the filing of such lists has ever been questioned.

· Counsel argues that chapter 231, Laws of 1920, did not change the place for the filing of the list, thus leaving the designated filing place of the lists as fixed in section 5268, Hemingway's Code; or if it did change the filing place, it did not designate a new filing place, but simply left the lists in the hands of the tax collectors of the state. We must confess that we cannot see in this a reason to doubt the authority of the legislature to designate a filing place for the lists of lands sold to the state at the postponed or continued sales on the first Monday of May, 1922. If counsel is correct in this contention, a full and complete answer is that we are not dealing with either section 5268, Hemingway's Code or chapter 231, Laws of 1920, but with chapter 137, Laws of 1922 only.

The legislature has full complete and exclusive authority to designate the time, the manner, the place and the details of making sales for taxes, as well as the manner and all details connected with the conveyances and list thereunder, including the filing and recording of the same and the redemption from such sales, saving only its limitation of the time provided by the Constitution for redemptions. We are unable to perceive wherein chapter 137, Laws of 1922 has violated, overstepped or abused these powers.

II.   Another contention of appellant is that chapter 137, Laws of 1922, when read in connection with chapter 135, Laws of 1922, leaves the day of sale fixed as the first

Monday of April, 1922. When read together we do not think there can be any conflict with the two statutes, neither can there be a conflict between one part of chapter 137 and any other part thereof. The plain legislative intent, which cannot be denied, was to continue the benefits provided by chapter 135 in full force and effect for the refunding of damages collected and prevention of thereafter collecting damages.

III. We have carefully studied chapter 137, Laws of 1922, and have been unable to discover wherein said chapter attempts to amend any section of the Code. It is true that it does refer to section 4326, Code of 1906, but without attempting to amend said section or any other section of the Code or any other law of the state of Mississippi. If the legislature has the authority to say generally that all lands delinquent for taxes in any year shall be advertised for sale on the first Monday of April and sold in accordance with that notice can it be doubted that the legislature also has the right to say that all lands delinquent for taxes for the fiscal year 1921 shall be sold on the first Monday of May, 1922? Must the legislature amend several sections of the Code in order to fix the sale for delinquent taxes of 1921 on the first Monday of May, 1922?

IV. In answer to appellant's contention that chapter 137, Laws of 1922, attempted only to prescribe what the published notices of sale should contain and by its own terms failed to accomplish that purpose, we know of no more effective way to answer this than by reference to the statute itself, and therein we find that the legislature specifically provided that the tax collectors should not sell land for 1921 delinquent taxes on the first Monday of April, 1922, but should sell the same for such delinquent taxes on the first Monday of May, 1922, without further advertisement or notice.

The legislature intended to provide not what the published notice should contain, but when the lands advertised for sale and described in said notices should be sold.

V. The appellant contends that chapter 137, Laws of 1922, is in conflict with section 6962, Hemingway's Code, providing when lands delinquent for taxes shall be sold. Section 6962, Hemingway's Code, is a creature of the legislature and is not possessed of any inherent right to claim consideration above the other enactments of the legislature; neither is it to be classed with the laws of the Medes and the Persians, which changeth not. It is not in conflict with said chapter 137 for the reason that said chapter 137 was an emergency act, served its purpose when the tax sales were completed and the conveyances and list of tax sales made thereunder were completed and filed, leaving section 6962, Hemingway's Code, still in force and effect, governing tax sales made thereafter.

Chapter 137, Laws of 1922, destroyed no vested rights. Our understanding of tax sales is that a tax sale is always a sale *in invitum,* and what rights then vested in appellant were destroyed thereby we cannot perceive.

VI. Another contention challenges the validity of chapter 231, Laws of 1920. It would make no difference with this case whether the same be valid or invalid. Counsel's argument in support of the invalidity of this statute appears to be that because this statute places the duty of attending to redemptions of land sold to the state for taxes on the chancery clerk, without specifically providing for a repeal of the law theretofore existing, placing this duty on the land commissioner, the statute is void. Even if this were good law, appellant cannot complain, for the record shows that appellant did not offer to redeem this land by tendering the redemption money to any officer of George county or the state of Mississippi. Then again if the said chapter 231, Laws of 1920, be void, the original law with reference to re-

demptions before the land commissioner was in force
and appellant had the right to there apply for and se-
cure redemption from the tax sale, which right he did not
exercise or attempt to exercise. We submit that chapter
231, Laws of 1920, is not void. It surely placed the duty
of attending to redemptions from state tax sales on the
chancery clerk; and being a later enactment, repealed
that part of the code section placing this duty on the land
commissioner.

VIII. Lastly, appellant insists that House Bill 16,
chapter 185, Acts of 1926, is void. His contentions be-
ing, first, that this is a general law and by its own terms
operation is suspended for the benefit of persons who
prior to its enactment had brought urban property from
the state in good faith; second, that it is a land grant to
certain persons and corporations by local, private or
special laws; third, that it is a gratuitous donation of land
to certain persons and corporations; and, fourth, that it
violates the equal privilege clause of the Fourteenth
Amendment to the Federal Constitution.

We think that a sufficient answer to this contention is
found in the fact that the record discloses that the land
herein involved was purchased from the state of Missis-
sippi under the general laws before the decision of this
court in *Huber* v. *Freret,* 103 So. 3, and before the enact-
ment of House Bill 16, Laws of 1926, and also further
shows that said land is not urban business property, the
ruling of this court in the Huber case being limited to
urban business property as distinguished in the later
case of *The State of Mississippi* v. *Lockyer,* from the
chancery court of Harrison county and the appellee is
entitled to an affirmance of this case without reference to
said House Bill 16, Laws of 1926.

As we understand section 87 of the Constitution with
reference to the suspension of the operation of general
laws therein prohibited, the suspension must be for the
benefit of some person or corporation to the exclusion of
other persons or corporations. A careful reading of

this enactment will show that such a suspension was not intended nor accomplished by the bill.

We submit, however, that even if it did partially suspend the operation of the first section of the act, still it did not violate section 87 of the Constitution for the reason that its operation was not suspended for the benefit of any individual or private corporation or association, but was for the purpose of protecting rights already vested.

The second angle from which appellant challenges chapter 185, Laws of 1926, is that it grants land by local, private or special laws and not by general law. We are unable to arrive at that conclusion after reading his argument and perusing the law itself. The law is general in all respects. All of the urban property prior thereto sold by the state of Mississippi was placed in one class and the law applied with equal force to every one of the many separate and distinct tracts placed in that class, and every person who had prior thereto become the purchaser of any one of such separate and distinct tracts was treated as every other such person, and if this be not general in its operations and effects we must confess that we do not fully understand the meaning of general laws.

In the third place, appellant contends that section 185, Laws of 1926, is a donation of lands in violation of the Constitution. But to glance at the statute completely refutes this argument. The last angle from which appellant assails chapter 185, Laws of 1926, is that it violates the equal privilege clause of the Fourteenth Amendment to the Federal Constitution. His argument along this line is that a rank outsider should be allowed equal footing with the fellow who already owns the equitable and moral title to this class of land by prior purchase and an equal chance to acquire the same by paying an amount equal to the additional consideration the prior purchaser would be required to pay for the lands; or, to state it differently, the prior purchaser is not entitled

to the equal protection clause of the Fourteenth Amendment, but must sacrifice the prior consideration paid by him and go into the open market and bid against the world for the land he has already bought and paid value for.

We are convinced that chapter 137, Laws of 1922, afforded the whole and complete law for making tax sales for the delinquent taxes of the fiscal year 1922; and if this law be valid, we are entitled to an affirmance. Chapter 137, Laws of 1922, is complete and stands alone and is valid. Chapter 231, Laws of 1920, does not apply to this case in any particular. The title from the state of Mississippi is good regardless of the validity of chapter 185, Laws of 1926, which statute is valid.

Argued orally by *W. H. Hughes,* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellee filed his bill in the chancery court of George county against appellant and all others having or claiming any interest in lots three and four of block one of St. George terrace, in the town of Lucedale, in the said county, to confirm his title thereto. There was a decree *pro confesso* against all other defendants, except appellant, Hart. Afterwards there was a hearing on original bill, and answer of appellant, Hart, and proofs, resulting in a decree in appellee's favor, confirming the latter's title to the lots involved. From that decree appellant prosecutes this appeal.

It was alleged in the bill, in substance, that the lots involved were sold on the 1st day of May, 1921, for the taxes due thereon for the previous year; that appellee was the true and legal owner of the lots involved. In his bill appellee deraigned title from the United States government down. The bill alleged that the taxes for 1921 were due and unpaid on the lots at the time of their sale on the 1st day of May, 1922; that the lots were struck

off to the state at the sale, and were not redeemed within the time provided by law; that all the proceedings by which the lots were assessed and sold for taxes were legal and regular in all respects; that on November 10, 1924, more than two years after the tax sale, appellee purchased the lots from the state, and received a patent thereto from the state; that, while the lots were situated within the corporate limits of the town of Lucedale, it was not in fact urban property; that appellee paid for the lots the sum of fifteen dollars, which was in excess of one dollar and twenty-five cents per acre; that, doubt having arisen as to the power of the state to sell and convey the lots under the then existing law, on the 18th day of June, 1926, under the authority of chapter 185, Laws of 1926, appellee repurchased the lots from the state.

Appellant appeared and contested the confirmation of appellee's tax title. He admitted in his answer that all the proceedings by which the lots had been assessed and the taxes made a charge against the lots were legal; that the state and county taxes for the year 1921 were both unpaid, and remained due and unpaid prior to the first Monday of May, 1922, when the lots were sold for their 1921 state and county taxes. Appellant, denied, however, that the tax sale made on the first Monday of May, 1922, was legal. He challenged the legality of the sale on several grounds, which will be considered and passed upon by the court.

The cause was tried on agreed facts embodied in writing and made a part of the record, which agreement follows, emitting the formal parts:

"In the above-styled cause it is agreed between the parties that the land herein involved was assessed to F. M. Young for the state and county taxes due thereon for the fiscal year 1921, who thereafter conveyed said land; that said taxes for said fiscal year were not paid and said land was advertised by the tax collector of George county, Miss., for sale, to enforce the payment of said taxes, the sale being advertised to take place on the

first Monday of April, 1922, within legal hours, at the front door of the courthouse of George county, Miss., for cash, to the highest bidder therefor; that, in accordance with chapter 137 of the Laws of 1922, said sale was not made on the first Monday of April, 1922, but was made on the first Monday of May, 1922, being the first day of the said month, in accordance with the provisions of chapter 137 of the Laws of 1922; that said taxes were neither paid nor tendered, although due, on or before the day of sale; that at said tax sale, so held on the first Monday of May, 1922, being the first day of said month, within legal hours at the front door of the courthouse of George county, Miss., to the highest bidder for cash, there was no individual bidder for said land, and said land was struck off and sold to the state of Mississippi; that said land was not redeemed from said tax sale, nor was a tender made of the amount necessary to redeem the same; that a list, as required by chapter 137 of the Laws of 1922, was made, certified, and filed in the office of clerk of the chancery court of George county, Miss., on the 20th day of May, 1922, which list included the land herein involved; that, after the time for redemption had expired and said land had not been redeemed, the clerk of the chancery court of George county, Miss., certified to the land commissioner of the state of Mississippi, a list of all lands sold to the state of Mississippi at the tax sale so held on the first Monday of May, 1922, which remained unredeemed at the expiration of the time allowed for redemption, which list included the land herein involved; that said land was thereafter sold to the complainant herein, Oscar Backstrom, under and by virtue of the two patents set forth in the bill of complaint; that said land is situated within the municipality of the town of Lucedale, George county, Miss., and is situated in the residential section of said town, the nearest business house or place being the courthouse of said court, which is one block south of the land herein involved, and the nearest approach of said lots to said courthouse and lot being ap-

proximately two hundred thirty-five feet; that said land contains less than one acre.

"It is further agreed that the board of supervisors of said county of George did not make and enter an order designating the first Monday, the 1st day of May, 1922, as the time for making sale of lands delinquent for taxes for the fiscal year 1921, including this land; that said sale as advertised to be made on the first Monday of April, 1922, was not continued from day to day to the first Monday, the 1st day of May, 1922, the said sale taking place without further advertising or notice of sale."

Appellant contends that the tax sale was void because the list of lands struck off to the state, including the lots involved in this case, was not filed with the land commissioner as required by section 2933, Code of 1906 (section 5268, Hemingway's Code); that chapter 231 of the Laws of 1920, undertaking to dispense with the requirement of that section of the Code to make the report to the land commissioner, is unconstitutional and void, because violative of section 61 of the Constitution. That section of the Constitution provides, that—"No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length."

Chapter 231 of the Laws of 1920, which appellant contends violates that section of the Constitution, is in the following language:

"That no reports of tax sales of lands either purchased by the state or by individuals shall be made to the land commissioner until after the period of two years from the date of tax sale, or the time allowed for redemption shall have expired. All redemptions shall be attended to by the clerks of the chancery courts of the respective counties, and the sums received therefor shall be paid into the county treasury, *and disposed of as now provided by law.* That after a period of two years from the date of such sales of lands for delinquent taxes shall have been made, then it shall be the duty of the chancery clerk to

report all sales made to the state of lands which have not been redeemed, to the state land commissioner, *to be dealt with as now provided by law.*"

Appellant's position is that this statute had the effect of amending section 2933, Code of 1906 (section 5268, Hemingway's Code), and that, in so doing, section 61 of the Constitution was violated, because the former act, as amended, was not brought forward and inserted in full. Putting it differently: Appellant contends that, because it is necessary to put both acts together in order to find what the law on the particular subject is, section 61 of the Constitution was violated. Section 2933, Code of 1906 (section 5268, Hemingway's Code), reads as follows:

"If, upon offering the land of any delinquent taxpayer, constituting one tract, no person will bid for it the whole amount of the taxes and all costs, the collector shall strike off the same to the state, and he shall, on or before the first Monday of May thereafter, transmit to the land com-- missioner a certified list of the lands struck off by him to the state, specifying the day of sale and the amount of taxes for which the sale was made, and each item of cost incident thereto, and the land commissioner shall correct the list, if necessary, by the records of his office and of the United States Land Office, and strike from it land improperly on it, and return it to the collector for correction, if necessary, and the collector shall correct it as instructed by the land commissioner and return it to him as corrected.

"And when the list is corrected it shall be recorded in the land commissioner's office and shall then be certified by the land commissioner and be transmitted to the clerk of the chancery court of the county, and be by him recorded in a book kept for that purpose."

It will be noted that chapter 231 of the Laws of 1920 does not in express terms undertake to amend section 2933, Code of 1906 (section 5268, Hemingway's Code). Therefore, if it had the effect of amending the latter

statute, it was an amendment by implication, and not an express amendment. Section 61 of the Constitution has no reference to amendments by implication when the amending statute is complete within itself, as we think chapter 231 of the Laws of 1920 is.

In construing constitutional provisions, the courts should look to the history of the times and examine the state of things in existence when the constitutional provision in question was adopted, in order to ascertain the mischief sought to be remedied. In other words, the courts should look to the historical facts surrounding the adoption of the constitutional provision in question. Prior well-known practices and usages should be considered. *Bradford Construction Co.* v. *Heflin,* 88 Miss. 314, 42 So. 174, 12 L. R. A. (N. S.) 1040, 8 Ann. Cas. 1077; *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 9 L. Ed. 1233; *Slaughterhouse Cases,* 16 Wall. 36, 21 L. Ed. 394; *Maxwell* v. *Dow,* 176 U. S. 581, 20 S. Ct. 448, 494, 44 L. Ed. 597; *Mattox* v. *U. S.,* 156 U. S. 237, 15 S. Ct. 337, 39 L. Ed. 409; *Fox* v. *McDonald,* 101 Ala. 51, 13 So. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98.

Cooley's Constitutional Limitations (7 Ed.), chapter 6, pp. 214 to 216, inclusive, gives the historical background of constitutional provisions of other states substantially the same as section 61 of our Constitution. The author discusses the evils existing in the process of legislation which were sought to be cured by such a constitutional provision, saying:

"The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the charges made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect,

and was, perhaps, sometimes drawn in that form for the express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation."

And concludes the discussion with this language:

"It should be observed that statutes which amend other statutes by implication are not within this provision; and it is not essential that they even refer to acts or sections which by implication they amend."

The author cites numerous authorities to sustain the proposition that such constitutional provision has no application to amendments by implication. In the Eighth Edition of Cooley's Constitutional Limitations there are some authorities to the contrary. We think, however, this court, in *Heidelberg et al.* v. *Batson et al.,* 119 Miss. 510, 81 So. 225, in unmistakable terms aligned itself with the courts which hold that such a constitutional provision has no application to amendments by implication. And, furthermore, this court has held, in several cases which are cited and relied on in the dissenting opinion in the present case, that section 61 of the Constitution has no application to a statute which, although amendatory of a former statute, is complete within itself. We think chapter 231 of the Laws of 1920, although amendatory of section 2933, Code of 1906 (section 5268, Hemingway's Code), is a complete scheme within itself, so far as the subject of legislation therein treated is concerned. It provides, in substance, that no reports of tax sales of land purchased by the state or individuals shall be made to the land commissioner until after the expiration of two years from the date of sale, or time allowed for redemption shall have expired; that all redemptions shall be attended to by the clerks of the chancery courts of the respective counties, and the sums received therefor paid into the county treasury, *and disposed of as now provided by law;* that, after a period of two years' time from the date of such sales, it shall be the duty of the chancery clerk to report all sales made of state lands

which have not been redeemed, to the state land commissioner, *to be dealt with as now provided by law.*

If there is anything in the amending statute upon which to base the claim that it (the amending statute) is not complete within itself, it is the two phrases, namely, "and disposed of as now provided by law," and "to be dealt with as now provided by law;" and the claim that, if the statute stands, there is no law requiring the tax collector to file with the chancery clerk the lists of lands sold for taxes.

The first quoted phrase of the statute has reference to the disposition of the redemption moneys paid into the hands of the chancery clerk; and the second quoted phrase has reference to the duty of the land commissioner regarding lands sold the state reported to him by the chancery clerks. We are of opinion that it was wholly unnecessary to put either of these phrases in the statute; that they add nothing to the statute, and without them the statute would have meant exactly the same thing it means with those phrases embodied therein. If those two phrases had been left out of the statute, the statute would have read as follows:

"That no reports of tax sales of lands either purchased by the state or by individuals shall be made to the land commissioner until after the period of two years from the date of tax sale, or the time allowed for redemption shall have expired. All redemptions shall be attended to by the clerks of the chancery courts of the respective counties, and the sums received therefor shall be paid into the county treasury. That after a period of two years from the date of such sales of lands for delinquent taxes shall have been made, then it shall be the duty of the chancery clerk to report all sales made to the state of lands which have not been redeemed, to the state land commissioner."

If the statute had been so adopted, and the question had arisen as to the disposition the chancery clerks were required to make of redemption moneys received by

them, resort would have been had to the other statutes on the subject then in force. And the same is true with reference to the last-quoted phrase. If the question had arisen as to how the land commissioner should deal with the sales of land to the state unredeemed, reported to him by the chancery clerks, the other statutes on that subject would have been resorted to. This would have been done under the well-known rule of statutory construction, that statutes treating the same subject-matter of legislation are to be construed together, and that a later statute will not be construed to repeal a former unless the former is either expressly repealed or is in necessary conflict with the later statute.

Is it true that, by inserting wholly unnecessary language in statute, language that adds nothing to its force and meaning, a statute entirely complete within itself without such language may bring the statute under the condemnation of section 61 of the Constitution? We think not. We think the changes made in the law by chapter 231 of the Laws of 1920 are complete as embodied in the act, and that no resort is necessary to any other statute in order to ascertain exactly what those changes were.

What we have said we think applies with equal force to the claim that chapter 231 of the Laws of 1920 is not complete within itself, on the alleged ground that it left no other statute in force requiring the tax collectors to file with the chancery clerks lists of lands sold the state for their taxes in order that redemptions might take place before the chancery clerks. There may not be express authority in any statute requiring such lists to be filed with the chancery clerks, but there is, at least, clear implied authority in the statutes; in fact, there are several statutes, which we will now notice, which in a large measure would be meaningless if the tax collectors were not required to file their lists of lands sold to the state for taxes, with the chancery clerks. Chapter 34 of the Laws

Special Session 1898 (section 6967, Hemingway's Code), provides in its first paragraph, as follows:

"The collector shall also make a list of lands sold to individuals, *in the same manner as required of lands sold to the state, which he shall file with the clerk of the chancery court, who shall record the same in a book to be: kept for that purpose; and the clerk of the chancery court shall, within ninety days and not less than sixty days prior to the expiration of the time of redemption, if the owner of the land sold, either to individuals or to the, state, be a resident of this state and the address known to said clerk, be required to issue notice to such owner, in effect following,"* etc.    (Italics ours.)

Section 2935, Code of 1906 (section 5270, Hemingway's Code), provides for the sale of lands delinquent for their taxes, which for any reason are not sold by the tax collector at the regular time.  The latter half of the section provides that the lists of lands so sold, whether the sales be to the state or individuals, shall be immediately filed by the tax collector in the office of the clerk of the chancery court, who shall at once record the list and send to the land commissioner a certified copy thereof.  Section 2937, Code of 1906 (section 5272, Hemingway's Code), provides, in substance, that the tax collector shall keep a record of tax lands for his convenience in collecting taxes and making settlements; that the land commissioner, when he releases lands upon redemption, *shall immediately notify the auditor, chancery clerk, and the collector; and that the chancery clerk, upon receipt of such notice, shall at once make entry thereof upon his record.*  What record?  The only record the statute could refer to would be the lists of lands sold to the state and to individuals, filed with the chancery clerk by the tax collector.  *Buford* v. *State* (No. 25764), decided by this court March 28, 1927, 111 So. 850, is not in the way of this view.  The statute involved in that case provided that in certain criminal cases an additional penalty should be imposed.  In discussing the question, the court said:

"The statute on which this prosecution is predicated is chapter 214, Laws of 1912 (Hemingway's Code, section 2086), which provides for punishment 'by a fine of not less than fifty dollars nor more than five hundred dollars, or to be imprisoned in the county jail not less than one week nor more than three months, or both, for the first conviction for an offense committed after the passage of this act.' Section 2, chapter 210, of the Laws of 1922, was manifestly intended to withdraw from the trial judge the discretion to impose a fine, or imprisonment, or both, and to make it mandatory on him to impose a term of imprisonment in each case of not less than ninety days. It refers to prior statutes for the fine to be imposed and thereby does exactly that which section 61 of the Constitution was, among other things, meant to prevent. It is therefore void."

That is not true of the statute here in question, for the changes it makes are complete within themselves. It is not necessary to go to any other statute to piece them out.

Chapter 137 of the Laws of 1922, is attacked on the ground that it violates section 87 of the Constitution, which provides, among other things, that the operation of a general law shall not be suspended by the legislature for the benefit of any individual or private corporation or association. The title of chapter 137 of the Laws of 1922, which follows, clearly indicates its scope and purpose:

"An act to prevent the tax collectors of the various counties or municipalities of the state from selling lands on the first Monday of April, 1922, for the taxes, delinquent thereon for the fiscal year of 1921, damages or costs, under section 4326, Mississippi Code of 1906, and continuing such sales advertised for said date without further advertisement or notice until the first Monday of May, 1922; extending the time for filing the conveyance to individuals and lists of lands struck off to the state in the proper office; preventing the collection of

damages on taxes delinquent for said fiscal year of 1921, until on and after May first, 1922."

This was a moratorium statute; its object was to tide over a period of financial distress. We do not think the statute violated section 87 of the Constitution. It did not have the effect of suspending a general law for the benefit of any individual or private corporation or association. The moratorium statute is as general in its terms as the statute which it suspended. The latter provided for the sale of *all* lands delinquent for their taxes by whomsoever owned. The moratorium statute is just as general, because it provides for the suspension of the sale of all lands delinquent for taxes by whomsoever owned.

The lands involved were urban property, situated in the municipality of Lucedale, and therefore the conveyance by the land commissioner to appellee was void under the authority of *Huber* v. *Freret*, 138 Miss. 238, 103 So. 3. After the decision of the court in the Huber case, the legislature adopted chapter 185 of the Laws of 1926, amending section 2919, Code of 1906 (section 5254, Hemingway's Code), so as to authorize the land commissioner, under certain conditions, to resell lands owned by the state situated in municipalities, which the state had formerly undertaken to sell and convey through the land commissioner, which conveyances were void under the holding in the Huber case. Appellee took advantage of this statute and repurchased the lands involved from the state.

Appellant contends that section 2 of the act is violative of section 87, paragraph (u) of section 90, and section 95 of the Constitution. It is contended that the section of the statute in question suspends the operation of section 1 of the statute, which provides for the sale of such lands generally, to any and all persons, in that it is an unconstitutional effort to give preference to those who had purchased from the land commissioner, but who, by

reason of want of authority in that officer, are without title.

We, think chapter 185 is to be construed as a whole, and that section 2 is a limitation upon the right of sale referred to in section 1 thereof. In other words, before the state can sell ,to other purchasers than those who have in good faith attempted to buy, and who have secured a purported conveyance from the land commissioner,, notice must be served upon such persons as have known post office addresses. Whenever the post office address of such person is not known, notice shall be published in a. newspaper published at Jackson, for a period of three weeks, giving a description of the land, and of the right of such buyer, or his vendee. It will be noted from a careful reading of the section that the applicant, notwithstanding his prior attempt to purchase, must have the land appraised by the land commissioner, the Governor, and the attorney-general, and must pay a reasonable price for the land as fixed by them. The act provides that, when such reasonable price has been determined, then the purchaser shall be credited with the price paid the land commissioner under his attempted purchase, with six per cent interest thereon, compounded annually, not to exceed the present value as fixed by the appraisers. In other words, if the price paid in an attempt in good faith to purchase prior to the act is less than the reasonable price fixed by the land commissioner, Governor, and attorney-general, the amount so paid is credited on such fixed price; but, if the price formerly paid equals or exceeds such reasonable valuation, it is credited only up to the valuation. A conveyance of land under the act is to perfect an attempt to purchase where the amount of money theretofore paid for the land equals or exceeds the value of the land at the time of purchase, and where the deed of conveyance is invalid. If the act had not been passed, purchasers would have been entitled to a refund of the purchase money, with interest thereon. But, instead of the state refunding this pur-

chase money and reselling the land, the legislature deemed it fair to give the purchaser in good faith an opportunity to perfect his title, and save the state the trouble of going through the process of refunding it.

We do not think chapter 185 violates the provisions of either of the sections of the Constitution invoked, and we do not think it comes within the condemnation of *Winton* v. *Day*, 96 Miss. 1, 49 So. 264. It is an effort on the part of the state to do justice to those who, in good faith, had attempted to purchase state lands, and who (both they and the land commissioner) thought they were getting valid titles at the time of purchase, by giving such persons an opportunity, not to take the lands at the price contracted for, but at their appraised value at the time of their application after the passage of the act. It is not a suspension of the provisions of section 1 in favor of a particular person or class of persons, but is excepting from the power of sale such lands as have in good faith been attempted to be conveyed, the title to which failed because of the want of power in the officer to sell, until former purchasers have had opportunity to perfect their invalid titles. Of course, many of those attempting to purchase believed they were getting valid titles to the lands so purchased, and improved and otherwise dealt with the lands as though they had valid titles thereto; and to refuse to provide any method for their relief would result in hardships in numerous cases. Ordinarily, the legislature can ratify and confirm what has been done by the agents of the state. It is only where expressly prohibited by the Constitution that it may not do so.

We think the provisions of section 2 of the act are a legal and just effort on the part of the legislature to do justice to those who, in good faith, for a reasonable consideration, have attempted to purchase state lands, but have failed to get title thereto. The sale to such a purchaser is, in no sense, a donation of land to him, because a reasonable price, fixed by officers of the state selected

for that purpose, is paid for the land. If, after notice, such purchaser does not choose to pay the reasonable price so fixed, then the land is available to any person desiring to purchase same and willing to pay the fixed price therefor.

Section 90, par. (u), was not violated, because it does not prohibit the sale of lands in the way provided by section 2 of the act, but undertakes to prevent the state from granting by special law to particular persons or corporations lands of the state. Where the state has in good faith sold lands for a fair value, it owes a moral duty to the purchaser; and this duty may be performed in the manner which the legislature has undertaken in the present act to prescribe.

Section 95 of the Constitution was not violated, because the land was not donated to any one directly or indirectly, nor sold to a corporation or association for a less price than it was offered to individuals. The legislature was careful to preserve the rights of the state. Under the act, the state is entitled to a fair and reasonable value for the land, regardless of any former attempt to purchase, and it got that.

We do not mean to impair the decision in *Winton* v. *Day, supra,* in any respect. What was there done is clearly prohibited, and the principles announced are wholesome.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I am unable to agree with the majority opinion, that chapter 231 of the Laws of 1920 is constitutional. I think it is clearly in conflict with section 61 of the Constitution. This act nowhere refers to section 5268, Hemingway's Code (section 2933, Code of 1906), and section 5271, Hemingway's Code (section 2936, Code of 1906), and is not a complete enactment within itself upon the subject of where the list shall be filed and what procedure may be taken to redeem the land; and it is necessary to take the two sections of the Code referred to above and the act,

by striking out of the Code section certain matter and inserting certain provisions of the act mandatory thereof, to determine what the present law is.

Section 5268, Hemingway's Code (section 2933, Code of 1906, as amended by the Laws of 1912, chapter 230), reads as follows:

"*Certain Lands to Be Stricken to State.*—If, upon offering the land of any delinquent taxpayer constituting one tract, no person will bid for it the whole amount of the taxes and all costs, the collector shall strike off the same to the state, and he shall, on or before the first Monday of May thereafter, transmit to the land commissioner a certified list of the lands struck off by him to the state, specifying the day of sale and the amount of taxes for which the sale was made, and each item of cost incident thereto, and the land commissioner shall correct the list, if necessary, by the records of his office and of the United States Land Office, and strike from it land improperly on it, and return it to the collector for correction, if necessary, and the collector shall correct it as instructed by the land commissioner and return it to him as corrected.

"And when the list is corrected it shall be recorded in the land commissioner's office and shall then be certified by the land commissioner and be transmitted to the clerk of the chancery court of the county, and be by him recorded in a book kept for that purpose." Laws 1912, chapter 230, in effect March 16, 1912.

It will be seen, from a reading of this section, that the tax collector shall strike off lands to the state; that he shall, on or before the first Monday of May thereafter, transmit to the land commissioner a certified list of the lands struck off by him to the state, specifying the day of sale and the amount of taxes for which the sale was made, and each item of cost incident thereto, and the land commissioner shall correct the list, if necessary, by the records of his office and of the United States Land Office, and strike from it land improperly on it, and return it to the collector for correction.

Chapter 231 merely says that it is not necessary for the tax collector to make report of the sales to the land commissioner as required in this section, until after the period of two years from the date of the tax sale, or the time for redemption shall have expired. It omits any reference as to whether the sales list shall be corrected by the chancery clerk, or any other person. The new act is silent as to what the tax collector shall do with the sales list during the period allowed for redemption. If it is to be filed with the chancery clerk, no time is specified in this act as to when it shall be so filed. The act provides that all redemptions shall be attended to by the chancery clerks of the respective counties; but the act does not contain the requirements for redemption, and does not say when, if at all, the list is to be filed with the chancery clerk by the tax collector. To get this information we are obliged to refer to other sections of the law, and deduce the law by a comparison of the new law with the old—substituting the words of the new act at appropriate places in the old act.

Is the list made by the tax collector of lands struck off to the state to be corrected by anybody during the two years? If so, by whom? The new act is silent upon that matter. The old act is not expressly repealed, and it requires the land commissioner to check the list of lands sold by the tax collectors with the records in the land commissioner's office and with the records in the Land Office of the United States. Is this still a requirement? If so, who shall make the correction? Does the new act contemplate that the correction of the list shall be deferred until after the two years for redemption shall have expired and no redemption taken place, or is this requirement dispensed with altogether?

Section 5270, Hemingway's Code (section 2935, Code of 1906), referred to in the majority opinion, refers to special sales where lands are not sold at the regular time, and has no bearing to sustain the act here under review. It does not support the majority opinion.

Section 61 of the Mississippi Constitution of 1890 provides that—"No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length."

The new act does not comply with this requirement. It does not contain a complete enactment upon the subject with which it deals; neither does it set forth the section amended as it will read when amended.

In *Seay* v. *Laurel Plumbing & Metal Co.,* 110 Miss. 834, 71 So. 9, the court had before it the question whether chapter 232, Laws of 1912, undertaking to give certain persons liens upon property, and make more effective liens of laborers and others employed in the construction of buildings so as to amend and enlarge section 3074, Code of 1906. A comparison of chapter 232, Laws of 1912, with section 3074, Code of 1906, will show that the said chapter upon that subject was nearer a complete enactment than is the one before us, compared with the two sections referred to above; and the court held in that case that that act was void, because it did not comply with section 61 of the state Constitution.

In *Badenoch* v. *City of Chicago,* 222 Ill. 71, 78 N. E. 31, the supreme court of the state of Illinois discussed a similar provision to the one contained in section 61, and at page 78 of the official report (78 N. E. 33) the court said:

"It is contended upon behalf of the city that the effect of the Act of May 11, 1905 [Laws 1905, p. 285], is to amend the general statutes upon the subjects of attachment and garnishment in violation of section 13 of article 4 of the Constitution of 1870, which provides that 'no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act.' It will be observed from its reading that the title of said act purports to be the title of a complete act upon the subject with which the title deals, and if such is the effect of the act it is not in conflict with said constitutional inhibition, although it

may have the effect to modify or repeal, by implication, existing laws. If, however, the effect of the new act is to amend the general statutes of the state upon the subjects of attachment and garnishment by intermingling the provisions of the new act with the provisions of those statutes or by adding to those statutes new provisions, so as to create out of the general statutes heretofore in force upon the subjects of attachment and garnishment and the new act a new law for the attachment and garnishment of the salaries and wages of the officers and employees of certain municipal corporations named in the title of the act, then the new act is clearly amendatory of the old statutes upon those subjects and in violation of said constitutional provision. . . . If it can be held to be such a law, constituting a complete and entire act of legislation on the subject which it purports to deal with, it will be deemed good and not subject to the constitutional prohibition, notwithstanding it may repeal by implication, or modify, the provisions of prior existing laws. On the other hand, if the act is merely an attempt to amend the old law for the assessment of property by intermingling new and different provisions with the old ones or by adding·new provisions, so as to create out of the existing laws and this act together an act for the assessment of property, then the act is clearly amendatory of the old law, and the requirement of the Constitution is that the law so amended must be inserted at length in the new act. The character of the act in this respect must be determined, not by the title alone nor the question whether the act professes to be an amendment of existing laws, but by an examination and comparison of its provisions with prior laws which are left in force."

In *State* v. *Beddo,* 22 Utah, 432, 63 P. 96, the supreme court of Utah, in discussing a similar provision of the Constitution of that state upon statutes involved in that decision, said:

"The decisive question herein, it seems, arises under section 22, article 6, Constitution, which, so far as im-

portant here, provides that 'no law shall be revised or
amended by reference to its title only; but the act as re-
vised, shall be re-enacted and published at length.' These
provisions are clearly restrictive and mandatory.  Under
the first clause the legislature is deprived of all power
to revise or amend any law by merely referring to its
title.  To make a valid revision of or amendment to any
law, the act as revised, or section as amended, must be
re-enacted and published at length as provided in the lat-
ter clause quoted.  This is a wise provision of the Con-
stitution, and was intended to avoid that confusion which
would inevitably follow, if an act or section could be re-
vised or amended by mere reference to the title, or sec-
tion, or word, or line, as to which the change was in-
tended to be made; for after repeated amendments so
made the statute law would be rendered so ambiguous
and imperfect, and in the course of time, would require
the examination of so many enactments to ascertain what
statutes were in force, as to render any satisfactory
determination or conclusion exceedingly difficult if not
impossible.

"Such revisions and amendments by mere reference
to title, however, not only render the statute law difficult
of construction, but they are calculated to confuse and
mislead the public, and are therefore inimical to business
transactions and the interests of the people.  So they
have a tendency to encourage improvident legislation,
by misleading the average legislator, who, because of
numerous additions, insertions, or substitutions, made
with mere reference to the old statute or section, is un-
able to ascertain what the exact state of the law is, and
yet it is of the highest importance that every member of
the legislature shall have a correct understanding of
what the existing law is before he attempts to revise or
amend it.  This fact was doubtless recognized by the
framers of the Constitution who evidently intended the
provisions, above quoted, as a remedy for the evils re-
ferred to.  Therefore, when an act or a section is revised

or amended, the same must be complete within itself, so that when published as revised or amended it will contain all the law upon the subject embraced in the act or section, and any matter, contained in the old statute or section, which is not contained in the new ceases to have the force of law, except as to past transactions. Suth. Stat. Const., sec. 131; *Blackmore* v. *Dolan,* 50 Ind. 194; *Dod* v. *The State,* 18 Ind. 56.''

In *Kansas* v. *Carter,* 74 Kan. 156, 86 P. 138, the Kansas court, dealing with a similar constitutional provision of that state, at page 162 of the official report (86 P. 140) of the above case, said:

''In the parliamentary practice of England, the United States, and all other countries where the science of legislation has been cultivated and developed, it is customary to divide legislative enactments into sections [citing authorities]. By the Constitution of this state the section is made the indivisible unit of the legislative fabric. To insure the diligent attention of the legislative mind, the reading of a bill by sections at the time of final passage in no case can be dispensed with. Constitution, article 2, section 15. To prevent members of the legislature from practicing deception by the enactment of blind and confusing amendments, to prevent them from misleading themselves and the public as to changes in the law, and to remove the difficulties and uncertainties accompanying extended examinations and comparisons of various acts to ascertain the true state of the statute law upon any subject (*People* v. *Mahaney,* 13 Mich. 481), the constitutional provision quoted above was adopted by the people, making it necessary to embody in every amendatory act the entire section or sections amended and providing that the section or sections amended shall be repealed. This constitutional requirement is mandatory and invalidates all acts in contravention of its terms. *State* v. *Guiney,* 55 Kan. 532, 40 P. 926; *In re Ashby,* 60 Kan. 101, 55 P. 336; 26 A. & E. Encycl. of L. 709.''

In *Bates* v. *State,* 118 Ala. 102, 24 So. 448, the supreme court of Alabama, in discussing the effect of similar constitutional provisions in that state, at pages 449 and 450 of the Southern Reporter (118 Ala. 106), said:

"In *Ex parte Pollard,* 40 Ala. 100, it was said, in construing this provision, as it appeared in the Constitution of 1865: 'It was never intended by the Constitution that every law which would affect some previous statute of variant provisions on the same subject, should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the Constitution.'

"In the case of *Bridge Co.* v. *Olmstead,* 41 Ala. 9, the court construed the 'act to amend an act, entitled an act to incorporate a company to build a bridge across the Warrior river, opposite the city of Tuscaloosa, approved Jan. 2, 1833.' [Acts 1865-66, p. 268.] Section 1 of the amendatory act provided 'that the above recited act be amended, by additional sections, numbered and worded as follows, which additional sections shall, for all purposes, be deemed and held as a part of the original act, to the same extent, and in the same manner, as if the same had been incorporated therein at the time of its passage.' Then follow sections 11, 12, and 13. The court held that the act in its form was amendatory, not original; that it was placed in the legal attitude of being incorporated in additional sections in the original act; that its full effect could not be determined, without reference to the original act, as the entire operation of the provisions of the act could not be safely pronounced, without an examination of the other, with which, as parts of a whole, they

are to be compared and construed. Referring with approval to what was said in *Ex parte Pollard, supra,* it was said, that 'a judicial exclusion of such an act from the prohibition of the Constitution, would practically disregard its mandate.'

"In *Gandy* v. *State,* 86 Ala. 20, 5 So. 420, the construction of the Constitution as given in the case of *Ex parte Pollard,* as quoted above, was approved as the proper construction of that section.

"Our last and, perhaps, fullest utterance on the subject may be found in the recent case of *State* v. *Rogers,* 107 Ala. 444, 19 So. 909 [32 L. R. A. 520], where the authorities are reviewed, and the construction given to the clause of the Constitution under consideration in *Ex parte Pollard* was adhered to as the proper one. What was said by Cooley, J., in *People* v. *Mahaney,* 13 Mich. 481, is quoted and approved, namely, that 'this constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the law. An amendatory act, which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation.' "

In Cooley's Constitutional Limitations (8 Ed.) at page 316, in case note to the discussion of the subject of provisions of the Constitution like section 61 of our Constitution, it is said:

"But, if an act 'is not complete in itself, and is clearly amendatory of a former statute, it falls within the con-

stitutional inhibition, whether or not it purports on its face to be amendatory or an independent act' (citing authorities). And, 'even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject so as to make of the old and the new a connected piece of legislation covering the same subject, the latter act must be considered an amendment of the former and as within the constitutional prohibition' (citing authorities)."

The case of *Buford* v. *State* (Miss.), 111 So. 850, quoted from in the majority opinion and decided by the full court, is directly opposed to the majority opinion, and, if followed, would clearly make chapter 231, Laws of 1920, unconstitutional. This case is sound, and supports my view fully.

A careful study of the rules of procedure in the Constitution, in which section 61 is placed, shows that the Constitutional Convention was endeavoring to secure considered legislation as well as simplicity and certainty in the law itself. One of the provisions requires that every bill be read in full immediately before its passage. Another provision requires that bills be read at other times; and many other provisions were placed in the Constitution designed to secure the fullest attention to the law being passed by the legislature by the members thereof.

It would be impossible for a member of the legislature, merely listening to the reading of the act before us (chapter 231, Laws of 1920), to comprehend what the full effect of the act would be if given force. The section serves a useful purpose, and should be given reasonable construction, and should effectuate the purpose of the Constitutional Convention. I think the great weight of authority supports the conclusion reached. See 18 Dec. Dig. "Statutes," 51, 141(1), 141(2), 141(3), 166, and 170; 44 Cent. Dig. title "Statutes," sections 48, 198, and

209.  *In re Buelow* (D. C.), 98 F. 86; *Rose* v. *Lampley,*
146 Ala. 445, 41 So. 521; *People* v. *Board of, etc., Chicago,*
221 Ill. 9, 77 N. E. 321, 5 Ann. Cas. 562; *State* v. *Lincoln
Tr. Co.,* 144 Mo. 562, 46 S. W. 593; *Morrison* v. *Railroad
Co.,* 96 Mo. 602, 9 S. W. 626, 10 S. W. 148.

In view of the foregoing, I am of the opinion that chap-
ter 231 violates section 61 of the state Constitution, and
that, as the list was not filed with the land commissioner
as required by section 5268, Hemingway's Code (chapter
230, Laws of 1912), the tax sale was void.  See *Mayson*
v. *Banks,* 59 Miss. 447; *Adams* v. *Mills,* 71 Miss. 150, 14
So. 462; *Howie* v. *Alford,* 100 Miss. 485, 56 So. 797.

I have some doubt as to the constitutionality of chap-
ter 137 of the Laws of 1922, but my view is not strong
enough to place against those of the majority on the
grounds on which it is attacked here.  Perhaps the state
could attack it under another section of the Constitution,
and perhaps the state alone could raise the constitution-
ality of that act.

SMITH, C. J., and McGOWEN, J., join in this dissent.