# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

# OCTOBER TERM, 1909.

ROBERT N. WIN꞉ ᴜɴ *v.* WINSTON C. DAY.

[49 South. 264.]

1. TAXATION. *Sales to state. Cancellation. Laws* 1875, 1880, 1890. *Old records.*

A sale of lands to the state made for taxes in 1868 is not void merely because it is evidenced only by old records and was not brought forward under the abatement act (Laws 1875, p. 11, ch. 2), or the act of 1880 (Laws 1880, p. 88, ch. 9), or the act of 1890 (Laws 1890, p. 16, ch. 5), requiring compilations of lands claimed by the state, since those acts did not cancel tax sales not listed under them unless they were omitted by the advice of the attorney as provided in the act of 1880, sec. 2.

2. SAME. *Constitutional law. Legislative grant. Constitution* 1890, *sec.* 90u. *Constitution* 1890, *sec.* 95. *Laws* 1908, *p.* 130, *ch.* 121.

Laws 1908, p. 130, ch. 121, providing that lands purchased by the state at tax sales prior to 1875 and not embraced in the lists returned that year to the auditor of public accounts under the abatement act (Laws 1875, p. 11, ch. 2) were thereby relinquished to the person who, but for the tax sales, would have been the owners, upon the payment of a small sum by such owners as a fee for a patent, is a legislative grant and in contravention of constitution 1890, sec. 90u, prohibiting the passage of special laws granting lands of the state to any person, and constitution 1890, sec. 95, forbidding a donation of lands belonging to the state to private corporations or persons.

96 Miss.—1

FROM the chancery court of Scott county.

HON. JAMES L. McCASKILL, Chancellor.

Day, appellee, was complainant in the court below; Winton, appellant, was defendant there.   From a decree in complainant's favor defendant appealed to the supreme court.

The suit was for the specific performance of an executory contract for the sale of lands and presented the question whether appellant, who was defendant below, can be required to accept title to lands sold to the state for taxes July 6, 1868, for the taxes of 1867; appellant being under contract to accept only perfect title to the lands contracted for.   The object of this suit was to determine whether or not chapter 121, p. 130, Laws 1908, is constitutional.   This act was passed to quiet the title to all lands sold prior to 1875 which had not been brought forward under the abatement act of 1875 (Acts 1875, p. 11, c. 2), providing "for the abatement of all taxes which have accrued prior to the taxes of the fiscal year 1874 upon all lands now claimed as forfeited to or purchased by the state of Mississippi," and further providing for the method to be pursued by the various officers relative to giving notices and making settlement, etc., and that the taxes of 1874 should be paid by the holders of the land, in default of which the taxes on said land should then be considered delinquent.   The abatement act was not taken advantage of by the holders of numerous tracts of land, in that they did not comply with all the requirements of said act.   To clear up their title the act of 1908 was passed, which is as follows:

## Chapter 121, Laws 1908.

"An act to relinquish the title or claim of the state of Mississippi to certain lands sold prior to 1875, A. D., for delinquent taxes, and which were not brought forward under the abatement act of that year, and provide for issuing patents to the lawful owners of said land when desired, and to bring forward and list subject to sale by the state such lands as

were not brought forward under the abatement act and which do not now appear upon the regular sales list in the land department of the state of Mississippi.

"Section 1. Be it enacted by the legislature of the state of Mississippi, that all lands struck off to the state of Mississippi prior to 1875, A. D., for delinquent taxes, and which were not embraced in the list returned that year to the auditor under the abatement act and which have not previously and validly been disposed of by the state of Mississippi, and which are now in the possession, actual or constructive, of *bona fide* owners, and legally assessed for taxes as required by law, are hereby relinquished to those persons who, but for the sale or sales, would now be lawfully and equitably the owners thereof, and which said lands were not properly sold and accounted for to the auditor on or before the date of May 10, 1875.

"Sec. 2. Any *bona fide* owner of any of such lands as described in section 1 of this act, or any person or persons who would now be the lawful owners of said lands, but for the said sale or sales prior to 1875, A. D., and who is in actual or constructive possession of said lands, may apply to the land commissioner to issue a patent for the same, and upon the payment of two dollars and a half cash to the land commissioner he shall issue a patent therefor to such persons similar in all respects to a forfeited tax land patent, but said patent shall provide that it is issued subject to and under the provisions of this act.

"Sec. 3. Any person who shall claim under this act shall thereby relinquish to the state, county, levee board, city, town, or village any and all claims that such person may have to have taxes refunded upon such lands so claimed.

"Sec. 4. All lands described in section 1 of this act, which, upon investigation by the land commissioner, he shall find are not in the actual or constructive possession of any person, and which are not legally assessed for taxes at the time of the passage

of this act, and which are still legally and justly the property of the state, he is instructed to bring forward and enter upon the regular sales list in the land department for sale as other lands sold since 1875, A. D., are now listed," etc.

*Howie & Howie* and *Jeff Kent,* for appellant.

Counsel for appellant cited the following authorities: *Dingey v. Paxton,* 60 Miss. 1038; *Gable v. Witty,* 55 Miss. 26; *Chambers v. Myrick,* 61 Miss. 459; *Sigman v. Lundy,* 66 Miss. 522; *Olive v. Walton,* 33 Miss. 114; *Green v. Weller,* 32 Miss. 650; *Bridges v. Supervisors,* 58 Miss. 819; *Crump v. Supervisors,* 52 Miss. 107; *Howe v. State,* 53 Miss. 57; *Paxton v. Valley Land Co.,* 68 Miss. 739; *Commercial Bank v. Chambers,* 8 Smed. & M. 9.

*Green & Green,* for appellee.

Counsel for appellee cited the following authorities: *Bound v. Wisconsin, etc., R. Co.,* 45 Wis. 656; *Erb v. Morash,* 177 U. S. 586; Black on Constitutional Law, 60; *Campbell v. Bank,* 6 How. 672; *Newsom v. Cocke,* 44 Miss. 361; *State v. Edwards,* 46 So. 966; *Wright v. Roseberry,* 121 U. S. 496; *Marquese v. Caldwell,* 48 Miss. 23; *Railroad Co. v. Smith,* 9 Wall. 95; *Rice v. Railroad Co.,* 110 U. S. 697; *Lake Superior, etc. v. Cunningham,* 155 U. S. 371; *Lumber Company v. Rust,* 168 U. S. 591; *Jackson v. Dilworth,* 39 Miss. 772; *Daniel v. Purvis,* 50 Miss. 261; *Shotwell v. Covington,* 69 Miss. 735; *Wetherbee v. Roots,* 72 Miss. 355; *Cochran v. Baker,* 60 Miss. 288; *Day v. Smith,* 87 Miss. 395; *Wilkins v. Riley,* 46 Miss. 313; *State v. Piazza,* 66 Miss. 430; *Monaghan v. State,* 66 Miss. 514; *Clarke v. Frank,* 64 Miss. 827; *Cato v. Gordon,* 62 Miss. 376; *Paxton v. Valley Land Co.,* 68 Miss. 731; *Ballard v. Mississippi Cotton Oil Co.,* 81 Miss. 507; *Dogan v. Griffin,* 51 Miss. 856; *Shattuck v. Daniels,* 52 Miss. 834; *Gamble v. Witty,* 55 Miss. 26; *Peterson v. Kittredge,* 65 Miss. 33; *Woodruff v. State,* 77 Miss. 113.

MAYES, J., delivered the opinion of the court.

This suit was begun in the chancery court of Scott county, and is called a proceeding to specifically perform a contract. A demurrer was filed to the bill of complaint, and overruled by the chancellor, and the cause appealed here.

As a bill for specific performance this proceeding is a novelty; but, since it seems to have been the purpose of the litigating parties to invite the court to pass upon the constitutionality of chapter 121, p. 130, of the Laws of 1908, and the questions raised by the demurrer are wholly addressed to the validity of the above act, we confine ourselves to this question, since the appellant states that he is willing to comply with the so-called contract for the purchase of the property in question if the appellee can make title. In short, all questions are eliminated save that of the constitutionality of the above act. There is no fact alleged in the bill of complaint which would make void the tax of July 6, 1868, even when confessed on demurrer, as a tax title is never presumed invalid as a matter of law, when once a sale for taxes is shown, unless the facts alleged, when taken as true, show the invalidity. The allegation that the sale of the land for the taxes 1868 was void, because "it appears only in the obsolete records, and was not brought forward under the abatement act, or the act of 1880 [Acts 1880, p. 88, c. 9] or 1890 [Acts 1890, p. 16, c. 5], requiring compilation of lands claimed to be held by the state," would not warrant a holding that the tax title was void, even when confessed by demurrer, as those acts did not in any way cancel tax sales which were not listed in compliance with the acts, unless such lands were omitted by and with the advice of the attorney-general, as required in section 2 of the act of 1880, and the bill does not so allege. Unless chapter 121, p. 130, of the Acts of 1908, can be upheld as constitutional, as constitutional, it is plain that this demurrer should have been sustained.

Counsel for appellee concede that this act constitutes a grant

by the legislature and it seems to us that when this concession is made the case is ended. Counsel for appellee say "that the legislature, well aware of the hostility of the executive to the measure, made the statute a legislative grant." If this be correct, and it is our view that it is, let us see how the act is affected by the Constitution. Section 90 provides that "the legislature shall not pass any local, private, or special laws granting any lands under control of the state to any person or corporation." Const. sec. 90, par. "u." Again, by section 95 of the Constitution it is provided that "lands belonging to or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies." Keeping in mind these two provisions of the Constitution, let us see what the act does. Section 1 provides that all lands struck off to the state prior to 1875 for delinquent taxes, and which were not embraced in the list returned that year to the auditor under the abatement act, and which have not previously and validly been disposed of by the state of Mississippi, and which are now in the possession, actual or constructive, of *bona fide* owners, and legally assessed for taxes as required by law, are hereby relinquished to those persons who, but for the sale or sales, would now be lawfully and equitably the owners thereof. Thus by this section it is seen that the act is special, it is private, and it grants lands under the control of the state to private individuals; that is to say, it makes a grant of lands which "have not previously and validly been disposed of by the state"—that is to say, such lands as the state now owns under valid tax titles acquired prior to 1875—and these lands, now validly owned by the state and under its control, are granted to those persons, and those only, "who, but for the prior sale or sales to the state, would now be the lawful and equitable owners." Compare this section of the statute with paragraph "u" of section 90 of the Constitution, which provides that there shall not be any grant "of lands under the control of the state to any person or corporation," and the

conflict of this section of the statute with the clause of the Constitution just quoted is so perfectly apparent that it can admit of no question.

But, if this were not true, the statute violates section 95 of the Constitution, as it is a donation of lands "belonging to or under the control of the state," within the meaning of section 95 of the Constitution. Section 2 of the act also violates both sections of the Constitution above quoted, since it makes a grant or donation of lands belonging to the state to particular individuals or persons. Under no provision of the statute in question is the land which the statute attempts to deal with open to acquirement of all persons; but it can only be acquired by certain persons named in the act, and the act makes the grant to them to the exclusion of all other persons. Because the act requires the persons to whom the grant is made to pay $2.50 for the issuance of the patent to them, this does not in any way help the act so far as its validity is concerned. The very idea underlying the provisions of the Constitution above quoted is that the whole public shall have the right to share in acquiring any public lands, and no particular person or corporation can be given this exclusive right, no matter what may be the amount required to be paid as a considration for the exclusive power to purchase. The unconstitutionality of this act cannot be seriously questioned.

*Reversed, and bill dismissed.*