## SLAY v. LOWERY.*

(In Banc.  Nov. 5, 1928.  Suggestion of Error Overruled Dec. 17, 1928.)

[119 So. 819.  No. 27360.]

*Corpus Juris-Cyc References: Evidence, 22CJ, section 69, p. 133, n. 31; States, 36Cyc, p. 885, n. 47.

*Fred Bacho,* for appellant.

*Wadlington & Corban,* for appellee.

ANDERSON, J. Appellee filed his bill in the chancery court of Harrison county against appellant to confirm his title by patent from the state to certain lots, described in the bill, situated in the Summerville addition of the city of Biloxi, in said county. There was a trial of the case on bill, answer, and proofs, resulting in a decree confirming appellee's title.

On the former appeal in this case to the supreme court *(Slay* v. *Lowery,* 114 So. 830), the court held that at the time the lots involved were patented by the state to the appellee, a perfect title thereto was vested in the state by purchase at a tax sale. Appellee claimed title under two patents from the state, one issued on the third day of May, 1922, and another issued the fourth day of June, 1926, in lieu of the first patent, under chapter 185, Laws of 1926 (Hemingway's 1927 Code, sections 6087 to 6089, inclusive). On the first trial of the cause, the court admitted in evidence the first patent to the lots, but excluded the second patent. In the opinion of the court on the former appeal, the first patent was held to be void, under the authority of *Jenkins* v. *Bernard,* 148 Miss. 293, 114 So. 488, but the validity of the second patent was not passed upon, because when offered in evidence in the chancery court, it was ruled out; and for that reason this court held that it was not before this court, and reversed and remanded the cause.

When the cause went back to the lower court, the only material addition made to the record was the introduction, by the appellee, of the second patent, which was issued, as stated, in lieu of the first patent under authority of chapter 185, Laws of 1926 (Hemingway's 1926 Code, sections 6087 to 6089, inclusive). On the last trial

a decree was rendered establishing and confirming appellee's title, acquired by virtue of that patent.

When the first decree appealed from was rendered, the case of *Hart* v. *Backstrom,* 148 Miss. 13, 113 So. 898, had not been decided. The decision in that case, together with the decision in this case on the former appeal, foreclosed in favor of appellee every question involved in the cause except one, namely, whether or not the consideration paid the state by appellee for the lots was so inadequate as to amount to their donation by the state in violation of paragraph (u) of section 90, and section 95 of the Constitution. Paragraph (u) of the former section prohibits local, private, or special laws "granting any lands under control of the state to any person or corporation;" and section 95 of the Constitution provides, among other things, that "lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies."

The consideration paid the state by the appellee for the lots is to be found in the two patents under which he claimed title, the one issued on May 3, 1922, and the one issued in lieu of the first on June 4, 1926. The consideration set out in the first patent was fifty cents per lot; and in the second patent, one dollar additional for all the lots conveyed. There is no other evidence whatever in the record of this cause as to the value of the lots involved. Appellant offered none. Therefore, if we hold that by its patent of June 4, 1926, the state made a donation of the lots in violation of the Constitution, such holding must be based upon the consideration alone mentioned in the two patents, which is slightly above fifty cents a lot. For aught that appears in the record, the lots may have been so situated as to be almost worthless. It is shown by the record that the owner of the lots, rather than pay state and county taxes of a few cents on each of them, let them be forfeited to the state; and, furthermore, that

rather than pay the insignificant amount necessary to redeem the lots from the tax sale to the state he permitted to take place the lapse of the statutory two-year period provided for their redemption, and thereby caused the state's title thereto to become perfect, rather than purchase them from the state at the price paid for them by appellee.

Under the authority of *Hart* v. *Backstrom, supra,* the appellee by virtue of the patent issued in lieu of the first one in pursuance of chapter 185, Laws of 1926 (Hemingway's 1927 Code, sections 6087 to 6089, inclusive), acquired the state's title to the lots, unless, as stated, the consideration paid by the appellee for the lots was so small as to be tantamount to their donation by the state to the appellee. We do not think that *Winton* v. *Day,* 96 Miss. 1, 49 So. 264, sustains the position that it was a donation of the lots. The constitutionality of chapter 121 of the Laws of 1908 was under consideration in that case, particularly sections 1 and 2 of the act. It will be observed that that statute undertook to donate to a class of persons, described in the statute, certain forfeited tax lands, owned by the state, also described in the statute; and that the class of persons allowed to purchase under the statute was a preferred class; and that no others except that class would purchase. The statute only required a fee of two dollars and fifty cents to be paid by each patentee for his patent, regardless of the value of the land conveyed. Whether the quantity of land patented was one acre or a thousand acres, the patentee was only required to pay two dollars and fifty cents. It is evident from the statute that the two dollars and fifty cents fixed by its terms to be paid by each patentee was not intended as a consideration to the state for the conveyance of the lands, but as a fee for its service in issuing and delivering the patent. In other words, the statute undertook to make a donation pure and simple of certain forfeited tax lands to a preferred

class of persons without any consideration therefor whatever; and the court held in doing so paragraph (u) of section 90 and section 95 of the Constitution was violated.

We have no such case as that here. Prior to the adoption of chapter 185, Laws of 1926 (Hemingway's 1927 Code, sections 6087 to 6089, inclusive), the sale value of forfeited tax lands owned by the state, when sold at more than one dollar and twenty-five cents per acre, was appraised and fixed by the Governor and the land commissioner, as provided by sections 2912 and 2916, Code 1906 (Hemingway's 1927 Code, sections 6080, 6084). Under section 2 of chapter 185, Laws of 1926 (Hemingway's 1927 Code, sections 6087 to 6089), lieu patents were authorized to be issued to the purchasers of urban forfeited tax lands held by the state whose patents were void, at a valuation appraised and fixed by the Governor, the attorney-general, and the land commissioner. Appelleee's patent, issued on June 4, 1926, recites, among other things, that it was issued in lieu of a previous patent to appellee, and that all legal requirements had been complied with in its issuance. If that recital in the patent be true, it means that the Governor, the attorney-general, and the land commissioner, in good faith, appraised and fixed the value of these lots for sale. Appellee is entitled to the benefit of the presumption that the Governor, the attorney-general, and the land commissioner faithfully performed their official duties in fixing the sale value of the lots. Such presumption, if not conclusive, is at least *prima facie* true. *Jackson County* v. *Neville,* 131 Miss. 599, 95 So. 626. Appellant did not undertake to overturn that presumption. No evidence was offered to show bad faith on the part of the Governor, the attorney-general, and the land commissioner in the performance of their duties in appraising and fixing the value of the lots, and the execution of the patent to appellee.

*Affirmed.*

ETHRIDGE, J. (dissenting). I am unable to agree with the decision of the majority opinion in this case. The patent involved here reads as follows:

"Whereas, by virtue of the provisions of Chapter 77, Section 2912 of the Code of the State of Mississippi, 1906, providing for the sale of the Forfeited Tax Lands of the State of Mississippi, and whereas R. J. Lowery, desiring to purchase the 1 Lot South by Lowerey *et als.;* East by Holley Estate; North by Bayou Auguste; West by Avery *et als.,* in the City of Biloxi, Patent No. 14730, May 2nd, 1921, 1 Lot South by Division St., East by Illsley; North by Section Line; West by Benachi, in City of Biloxi, Miss., Patent No. 14759, dated June 16, 1921. Lot No. 4, Block 22, Summerville, Biloxi; Lots 1 and 6, Block 23, Lots 10 and 11, Block 23; Lots 3 and 4, Block 23-A; Lot 8, Block 28, Lot 11, Block 37, and all in Summerville, Biloxi, Miss., Patent No. 14958, May 3, 1922.

. "Lot South by Ryan; East by City Property; North by Porter St.; West by Logan, Biloxi, Miss. Lot 3, Block 31-A, Summerville, Biloxi, Patent No. 15809, dated Sept. 16, 1924. Lots 1 and 1e, Block 35, Lot 19, Block 9, Summerville, Biloxi, Patent No. 15128, dated Nov. 10, 1922 —— of Section —— Town —— Range ——, County of Harrison and having complied with all the requirements of the law in such cases made and provided.

"Now, therefore, The State of Mississippi, in consideration of the premises and the sum of one dollar being the amount required to purchase said land at the rate of $—— per acre, does hereby grant and convey to said R. J. Lowery, the lands above described."

This patent shows on its face that it was issued in lieu of five prior patents, and the property, as shown by the deed, is situated in different parts of the city of Biloxi. The court takes judicial notice of the location of municipalities in the state, and census reports made by the United States government under Federal law. In 1920 Biloxi had a population of 10,937 people, and it is a mat-

ter of general and common notoriety that the population has increased along the Mississippi coast where Biloxi is situated, and that the market value of lots in the city is much higher than in former years.

The patent does not show on its face that the property had been appraised by the land commissioner, the Governor and the attorney-general. The concluding part of section 1, chapter 185, Laws 1926, 6088 of Hemingway's Code 1927, provides:

"In selling such lands and the improvements thereon, if any, the land commissioner may ask and obtain greater prices therefor than those of swamp and overflowed lands."

The term "may," when used in a statute prescribing duties for officials, is generally used in a mandatory sense; and was clearly intended to be so used here. In selling lands in municipalities, where values are higher than in the rural sections, a greater price should be obtained for such lands. It is well known that land in municipalities, platted into blocks and lots, is of much greater value than mere acreage.

Section 2, chapter 185, Laws of 1926, prescribes that:

"All sales of such lands situated within municipalities, which lands have heretofore escheated to or title thereto become vested in the state, and which have been sold by the land commissioner of the state at a fair and reasonable price not less than that prescribed for the swamp and overflowed lands, may be conveyed to the original holder of the patents, or if he has sold same to his vendee at such reasonable price as the state land commissioner, the Governor, and the attorney-general shall fix."

This clearly prohibits the selling of such lands at less than a reasonable price, and such reasonable price must be determined by the officers named in the statute. This determination is to be based upon investigation and knowledge. The statute does not intend that they shall be sold without any of the officers making an inspection,

and reporting on the values so fixed. The powers conferred in this statute are merely statutory powers, and it is well settled law that the record in such cases must show affirmatively the jurisdictional facts upon which such officers may act, and that no presumptions are indulged in favor of their action, in the absence of such showing. *Ferguson* v. *Board of Supervisors,* 71 Miss. 524, 14 So. 81; *Bolivar Co.* v. *Coleman,* 71 Miss. 832, 15 So. 107.

There is nothing in the record to show that there was any consent whatever by the attorney-general, or that he participated in the sale of any manner whatever. The Governor and the land commissioner were not authorized to grant a patent in this case without having the attorney-general participate in the appraisal, and the record should show the appraisal, and that he did participate therein.

Section 95 of the Constitution of 1890 provides:

"Lands belonging to, or under the control of the state, shall never by donated *directly or indirectly,* to private corporations or individuals, or to railroad companies." (Emphasis supplied.)

The court must give effect to the Constitution by considering its purpose, and the history of the state prior to its enactment. The words "directly or indirectly" were put in for the specific purpose of preventing any such construction as the majority opinion has put upon it. Certainly it was not intended to prohibit a donation where there was absolutely no consideration whatever, and to uphold the same thing when a mere nominal consideration was received, grossly out of proportion to its value. In other words, when a mere nominal consideration is given, it is an indirect donation, and in the case before us the consideration is so small, and so unreasonable, considered with the fact that the lands were within the municipal corporation, as to prove conclusively to the reasoning mind that it was a mere scheme to avoid

the effect of the constitutional provision. We all know, as a matter of common sense, and everyday experience, that lands are nowhere subdivided into blocks and lots, and sold for any such consideration as fifty cents, or even a dollar, per lot.

Section 66 of the Constitution provides that:

"No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-thirds of the members elect of each branch of the legislature, nor by any vote for a sectarian purpose or use."

Suppose the legislature should undertake to dispose of the state university to a sectarian body. Would a nominal consideration of one dollar or ten dollars take the transaction out of this section? To so hold would shock both common sense and the conscience. It would be a mere effort to evade a plain and mandatory section of the Constitution, designed to protect the public in the saving of the state's property from an unwise and generous legislature.

We think this view is absolutely supported by *Winton v. Day,* 96 Miss. 1, 49 So. 264, cited in the majority opinion as not being applicable. It is true that in that opinion the court held that the transaction there involved violated both section 95 and paragraph (u) of section 90. After commenting upon its conflict with paragraph (u) the court, on page 7 of the Mississippi report, page 266 of the Southern, said:

"But, if this were not true, the statute violates section 95 of the Constitution, as it is a donation of lands 'belonging to or under the control of the state,' within the meaning of section 95 of the Constitution."

Prior to 1890 the state owned great tracts of timber and other valuable lands which, through a mistaken policy of legislative generosity, have been sold for a mere nominal consideration to individuals and corporations. The situation represented such a gross injustice to the

public at large as to amount practically to giving away great sections of valuable public lands. The constitutional convention wished to prevent any further exercise of such vicarious generosity, and we should construe the constitutional sections so as to further, and not defeat, the purpose the convention had in mind.

It is impossible for me to bring my mind to that state of hypnotism produced by legal presumption, to assume that the officers in fact valued the land here involved, and sold them at a fair and reasonable consideration. Common sense is one of the most valued assets we have in any situation in life, and especially where one is dealing with the public rights, and is under duty to exercise reason and administer justice. Under the decision now rendered, the constitutional provision becomes practically meaningless, and will no longer serve to protect the public interest.

McGowen and Pack, JJ., concurring in the dissent.