STATE *et al. v.* BUTLER *et al.*

(In Banc.   March 26, 1945.)

[21 So. (2d) 650.   No. 35812.]

Greek L. Rice, Attorney General, by W. B. Fontaine, Assistant Attorney General, for appellants.

Watkins & Eager, of Jackson, Ray, Spivey & Cain, of Canton, Wilbourn, Miller & Wilbourn, of Meridian, and William N. Bonner, of Houston, Tex., for appellees.

222

Argued orally by **W. B. Fontaine**, for appellants, and by **R. E. Wilbourn**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The appellees, Charlie and Milton Butler, who are the grantees of their father Owen Butler, deceased, brought this suit to have cancelled as a cloud upon their title to 80 acres of land in the First Judicial District of Jasper County a certain tax sale thereof made to the State of Mississippi on September 18, 1933, or in the alternative to have their title to the said land confirmed and quieted under and by virtue of a forfeited tax land patent obtained from the state by the said Owen Butler as former owner of the land.

The tax sale in question was alleged to be invalid upon several grounds, and the case was tried upon an agreed statement of facts. The trial court held the tax sale to be void, cancelled the same as a cloud upon the title of the complainants and confirmed and quieted their title.

The state in its answer denied the invalidity of such tax sale and sought in a cross-bill to have the patent cancelled which it had issued on September 21, 1939, to the said Owen Butler on the ground that the same was obtained by him without the payment of an adequate consideration therefor.

The tax sale was made for the unpaid taxes for the year 1932. The land assessment rolls for the years 1932 and 1933 were equalized in July and approved in Au-

226

gust, 1932, when the courthouse of the First Judicial District of the county at Paulding was destroyed by fire on September 10, 1932, prior to the filing of a copy of the assessment rolls with the State Tax Commission, there was not left in existence a copy of the assessment roll for the land in said district for the reason that the Tax Assessor had not filed an entire assessment roll of the whole county in each of the districts, but had filed at Paulding an assessment of only that part of the county situated in the First Judicial District, and at Bay Springs only that part of the assessment rolls that embraced only the lands situated in the Second Judicial District of the county.

Section 2338, Code 1930, Section 768, Code 1942, if controlling in the emergency above mentioned, provided for the use of the rolls for the years of 1930 and 1931 in collecting taxes for the current year of 1932. However, that Section of the Code, whether applicable or not, was not followed by the board of supervisors or the Sheriff and Tax Collector in the collection of taxes for said year, but when the board of supervisors met at an adjourned meeting on September 19, 1932, shortly after the fire "for the purpose of taking up the matter of the budget, passing on same, etc., for 1932," a notice was issued by the President of the board for a special meeting to be held at Paulding on September 28, 1932, to consider among other things "the matter of assessment rolls, real and personal, for said District for the year 1932." Then at such special meeting the board of supervisors ordered a reassessment of the property in the First Judicial District to be made for that year only, presumably under the supposed authority of Section 3190, Code 1930, Section 9814, Code 1942, which provides, among other things, that when the board of supervisors shall order a new assessment the roll shall be "prepared in the manner required by law when made at the regular time, and the board of supervisors and all other officers, either county or state, shall

perform all duties in reference to said roll, or rolls, as if made at the regular time.''

We pretermit the decision of the question as to whether the board of supervisors should have used the 1930 and 1931 assessment rolls for 1932 or should have ordered a reassessment under the circumstances, since the previous assessment was neither used nor the law as to a reassessment complied with in the instant case. But see in connection with the statutes already referred to in that behalf Section 3187, Code 1930, Section 9811, Code 1942. The notice of the said special meeting for September 28, 1932, in stating what the board would then consider, did not specify that a reassessment was to be ordered at such meeting, or what rolls were to be then considered.

Since the regular rolls had been equalized and approved at the July and August meetings of 1932 respectively, pursuant to notice in that behalf, and the property owners were not necessarily advised in any manner that all copies of such rolls had been destroyed by fire, or that none were on file anywhere, it is reasonable that they would have assumed that the consideration of the assessment rolls to be had at the special meeting on September 28, 1932, was due to some order of the State Tax Commission with reference to the rolls which had theretofore been equalized and approved by the board, instead of a reassessment of their property due to the destruction of such rolls by fire on September 10, 1932. And the statute, Section 3190, Code 1932, Section 9814, Code 1942, under which the board was undertaking to act in the premises, having also provided that ''in case of the destruction . . . of an assessment roll the board of supervisors may have duplicate copies made from copies on file in the office of the state tax commission, or in the office of the chancery clerk, and when certified to be correct by the clerk, the copy shall be treated and recognized as the legal roll,'' it will be readily seen that the taxpayers were not sufficiently advised by the notice of this special meeting for September 28, 1932, as to what rolls were to be considered. Then

too, the reassessment ordered at such special meeting was equalized at the November, 1932, meeting and approved at a special meeting in December, without the board having designated the November meeting as the time for such equalization and without proper notice to the taxpayers as to what was to be done at either the meeting at which the same were equalized or the meeting at which objections could be heard and the rolls approved.

We, are, therefore, of the opinion that for the reasons hereinbefore stated the reassessment upon which the tax sale in question was made was void, and we do not deem it necessary to discuss the remaining several grounds which are assigned by the appellees in support of their contention that the tax sale made thereon was likewise void.

Moreover, the state does not undertake to sustain the validity of such tax sale, but takes the position in its assignment of error and brief that the complainants were not entitled to relief, and that the state was entitled to have the patent cancelled which had been issued to the former owner, as. prayed for in its cross-bill, for the following reasons: (1) That regardless of the invalidity of the tax sale the appellees are estopped from contesting the same because Owen Butler, their vendor, applied for and obtained the forfeited tax land patent from the State of Mississippi; (2) that they are precluded from contesting the validity of the tax sale on account of the two year limitation on their right to do so under Chapter 196, Laws 1934; and (3) that the forfeited tax land patent was void for inadequacy of consideration.

If the state acquired no title under the tax sale because of its invalidity, the same nevertheless constituted a cloud upon the title of the former owner, and he had the right to either have the tax sale cancelled and removed as a cloud from his title, or to purchase the claim of title which was being asserted by the state. He could do the latter at much less trouble and expense than would have been incurred if he had permitted the state to issue its patent

to a third party, thereby rendering it necessary for him to litigate with such patentee the question of title. At any rate, there is absent from his purchase of a patent from the state the element of estoppel, since the state did not change its position to its detriment by relying upon any conduct of the patentee as former owner when he applied for the patent and paid the purchase price therefor. Since the state had nothing to convey it could not have been harmed by the conduct of the owner of the land in buying its outstanding claim. The well established rule is that a grantee in a deed is not estopped to deny the title of his grantor. 21 C. J. 1069; 31 C. J. S., Estoppel, sec. 15, p. 199. The exceptions to this rule are limited in scope, an example of which is where a vendee while retaining possession of the land seeks to challenge the title of his vendor in a suit to collect the purchase price thereof. The cases which deny the right of a tenant to question the title of his landlord would, of course, have no application here. The office of an estoppel is to protect a party from a loss which, but for the estoppel, he could not escape, and was never intended to work a positive gain to the party invoking the same. As was said by the Kentucky Court in Warfield Natural Gas Co. v. Ward, 286 Ky. 73, 149 S. W. (2d) 705, 718: "One having or claiming title to land by purchasing or procuring an outstanding or adverse claim or title does not admit that it is paramount to that under which he holds and does not thereby estop himself to deny its validity." Ordinarily there is no estoppel on the vendee unless he is under an obligation, express or implied, that at some time, or in some event, he will surrender the possession; as where the possession is taken under an executory contract of purchase, or the relation of tenancy exists. Morgan v. Hazlehurst Lodge, 53 Miss. 665.

That the statute of limitations does not apply in this case is too well settled in this state to admit of argument, where, as here, the former owner remained in possession continuously from the time of the tax sale until 1940, when

he sold the land to the appellees, who have remained in possession since that time. Russell Inv. Corporation v. Russell, 182 Miss. 385, 411, 178 So. 815, 182 So. 102; White v. Noblin, 183 Miss. 92, 183 So. 914; E. L. Bruce Co. v. Smallwood, 188 Miss. 771, 196 So. 227; Grant v. Montgomery, 193 Miss. 175, 5 So. (2d) 491; Leavenworth v. Claughton (Miss.), 19 So. (2d) 815, suggestion of error overruled.

And as to the alleged inadequacy of the consideration paid for the patent the agreed statement of facts discloses that the land remained assessed to Owen Butler, the former owner, after the sale on September 18, 1933, until the year 1938, and that he continued to pay the taxes on the land throughout said period of time, and evidently without knowing that it had been sold for taxes. When he applied for the patent in 1939 he was entitled as the former owner of the land to obtain such patent upon payment of all taxes, damages and costs accrued on such equitable terms as could be agreed upon by him and the Land Commissioner, subject to the approval of the Attorney General and the Governor. Section 6037, Code 1930, Section 4072, Code 1942. It should be presumed in the absence of proof of the contrary that the $25 paid by the patentee was sufficient to cover the taxes, damages and costs, since he had kept the taxes paid until shortly before the patent was applied for, and it will be presumed that the Land Commissioner, Attorney General and the Governor required the payment of the full amount then remaining due as taxes, damages and costs in the absence of proof to the contrary. It is stated in State v. Roell, 192 Miss. 873, 7 So. (2d) 867, 870, that: "The presumption is in favor of the existence and due performance of all the conditions upon which the validity of the patent depends. Bledsoe v. Doe ex dem. Little, 4 How. 13; Carter v. Spencer, 4 How. 42, 34 Am. Dec. 106; Surget et al. v. Doe ex dem. Little, 24 Miss. 118; Harris v. McKissack, 34 Miss. 464; Sweatt v. Corcoran, 37 Miss. 513; Edward Hines Yellow Pine Trustees et al. v. State ex rel.

Moore, 133 Miss. 334, 97 So. 552; State ex rel. v. Knapp, Stout & Co., 136 Miss. 709, 101 So. 433; and Slay v. Lowery, 152 Miss. 356, 119 So. 819.''

In the Edward Hines Yellow Pine Trustees v. State, 133 Miss. 334, 97 So. 552, 554, Id., 134 Miss. 533, 98 So. 158, case, the court said:

''A patent to land constituting part of the public domain by the sovereign is the very highest evidence of title. . . .

''Such a patent carries with it the presumption that all the legal prerequisites necessary to its issuance have been complied with; the presumption that the officers charged with executing land grants have performed their duties in regard to the several acts to be done by them. Harris v. McKissack, 34 Miss. 464; Surget v. [Doe ex dem.] Little, 24 Miss. 118; Sweatt v. Corcoran, supra; Bledsoe v. Little, supra; Carter v. Spencer, supra.''

Moreover the agreed statement of facts discloses that the applicant for this patent did not conceal or misrepresent any material fact in his application for the patent in question, and did not perpetrate any fraud upon the state in its procurement.

The decree of the trial court should therefore be affirmed.

Affirmed.