STATE ex rel. McCULLEN, STATE LAND COM'R, v. SPROLES et al.

(In Banc. Nov. 25, 1946.)

[28 So. (2d) 218. No. 36238.]

**Greek L. Rice,** Attorney General, by **W. B. Fontaine,** Assistant Attorney General, for appellant.

Barnett, Barnett, Jones & Stone, of Jackson, and H. V. Wall, of Brookhaven, for appellees.

Argued orally by **W. B. Fontaine**, for appellant, and by **H. V. Wall**, for appellees.

**McGehee, J.**, delivered the opinion of the Court.

On November 9, 1935, one Orman Sproles obtained a patent to 160 acres of land located in Pike County, which had been forfeited to the State for nonpayment of taxes. The patent was duly signed by the then Land Commissioner, counter-signed by the Governor, and attested by the Secretary of State. It recites that the purchaser named therein had "complied with all the requirements of the law in such cases made and provided", and that "in consideration of the premises and the sum of $35, being the amount required to purchase said land", the same was thereby granted and conveyed to the said patentee.

On or about the 24th day of May, 1945, the State Land Commissioner filed this suit against the patentee, Orman Sproles, whose address is unknown, and also against W. M. Brent, who purchased 80 acres of said land at a tax sale on September 15, 1941, and the remaining 80 acres thereof on September 21, 1942, and also against W. M. Brent's vendee of the timber and his lessee of the oil and gas rights, respectively, as well as the vendees of the patentee of said land. A decree pro confesso was taken against the said Orman Sproles and those claiming by deeds through him, and they do not appeal.

The bill of complaint seeks to have cancelled the patent, the subsequent tax sales, and the several subsequent conveyances, as clouds upon the State's asserted title to the land, on the alleged ground, first, that the consideration stated in the patent from the State to Orman Sproles "was wholly inadequate to convey title . . . and amounted to a donation of state lands in violation of Section 95 of the State Constitution of 1890," and, second, that the said patent was obtained without the payment of the pur-

chase price recited therein, and constituted a fraud upon the State.

At the time of the issuance of this patent, there was no statute which prescribed a minimum price per acre at which the public lands could be sold, but apparently the sum of $35 for 160 acres of land is grossly inadequate. However, there was no proof offered by the State, other than the facts recited in the patent, in support of the allegation as to the inadequacy of the purchase price. The proof offered as to the invalidity of the patent was directed solely to the question of whether or not the stated consideration named therein was in fact paid. And the burden of proof was upon the State to establish its allegation that the consideration was not actually paid. To meet this burden the State invoked and relied solely upon an agreed stipulation that if the Land Commissioner and the State Treasurer who were in office at the time of the trial were present to testify, they would say in substance that the public records in their respective offices fail to show that the purchase price was paid for said patent.

As against the negative proof thus offered by the State, we have the recitals of the patent to the effect that the patentee had ''complied with all of the requirements of the law in such cases made and provided,'' and also the further recital that it was in consideration of that premise and the sum of $35 that the land was being granted and conveyed. If the patentee had gained possession of this patent and carried it from the land office without having first paid the price therefor which had been agreed upon, he would have been guilty of fraud; and fraud is never presumed.

In view of the well known conditions which existed in the land office at the time of the issuance of this patent, it cannot be successfully contended that the mere fact that the treasurer's receipt for the purchase price of the land may not now be on file in the land office is a sufficient circumstance alone to overturn the solemn recitals of the patent as to its payment. And, most assuredly, a

subsequent purchaser of the land from one who had later acquired the same at a tax sale would not be required to make an investigation at the State Treasurer's office to ascertain whether or not the purchase price was actually paid when the patent was obtained by a former record owner.

It is unnecessary that we discuss the relative force of the presumption which may arise from the State's negative proof, as compared with that of the presumption to be indulged on account of the recitals in the patent and the further fact that the land was thereafter certified promptly by the Land Commissioner to the chancery clerk and local tax assessor as being thenceforth subject to taxation as private property. We prefer to base the decision here upon the equities of the present claimants as innocent purchasers, which arise from the settled law that a patent is the highest evidence of title, and is affirmative evidence that all prerequisites have been complied with, as was expressly held in the case of Carter v. Spencer, 4 How. 42, 34 Am. Dec. 106; Edward Hines Yellow Pine Trustees et al. v. State, 133 Miss. 334, 97 So. 552; Id., 134 Miss. 533, 98 So. 158; and State v. Butler, 197 Miss. 218, 21 So. (2d) 650, 653.

Moreover, in the case of the Colorado Coal & Iron Co. et al. v. United States, 123 U. S. 307, 8 S. Ct. 131, 133, 31 L. Ed. 182, where sixty-one land patents for land in Colorado had been obtained from the federal government through false and fraudulent applications, and where the lands were later acquired by innocent purchasers, the Court said: "But it is not such a fraud as prevents the passing of the legal title by the patents. It follows that, to a bill in equity to cancel the patents on these grounds alone, the defense of bona fide purchaser for value without notice is perfect." See also Maxwell Land-Grant case, United States v. Maxwell Land-Grant Co., 121 U. S. 325, 379, 381, 7 S. Ct. 1015, 30 L. Ed. 949 to 959, inclusive, and Section 4110, Code 1942, as to rights of innocent purchasers for value without notice.

In the instant case, we are not dealing with the question at issue as if Orman Sproles or his vendees were still claiming ownership of the land and the right to cancellation was being pressed against them on the ground of the inadequacy of the consideration recited in the patent, under such circumstances as were involved in the case of State ex rel. McCullen v. Adams, 185 Miss. 606, 188 So. 551. The appellees, who are here defending against this appeal, are claiming not through the patentee, but under a subsequent tax sale made to W. M. Brent by the local tax collector, nearly five years after the land had been certified by the State through its proper official back to the chancery clerk and the tax assessor as private property and liable for assessment and taxation; and the taxes have now been collected thereon by the State and county for approximately ten years following the issuance of such patent, without any attempt being made by the State to interfere with the possession of appellees and their right to improve the same as their own.

We think that the decree of the trial court in denying the relief prayed for, and dismissing the bill of complaint, is correct and should be affirmed.

Affirmed.

**Sydney Smith, C. J.**, did not participate in this decision.